**Reversed and Rendered and Memorandum Opinion filed November 1, 2022.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-21-00695-CV

## LG CHEM AMERICA, INC. AND LG CHEM, LTD., Appellants

## V.

## JAVIER ZAPATA, Appellee

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-03776**

## MEMORANDUM OPINION

Appellants LG Chem America, Inc. (LG America) and LG Chem, Ltd. (LG Chem) appeal the trial court's denial of their special appearances. Because the jurisdictional evidence does not establish that there is a substantial connection between the operative facts of appellee Javier Zapata's claims and appellants' purposeful contacts with Texas, we reverse the trial court's order denying appellants' special appearances and render judgment dismissing Zapata's claims against them.

BACKGROUND

Zapata alleged that an LG 18650 lithium-ion battery exploded in his pants pocket causing him serious injuries. Zapata subsequently filed suit against LG America and LG Chem alleging that appellants "designed, marketed, and/or manufactured" the 18650 lithium-ion battery, which he claimed was defective.

LG America and LG Chem filed separate special appearances asserting that the trial court did not have personal jurisdiction over them. In its special appearance, LG America averred that it is a Delaware corporation with its headquarters and principal place of business in Atlanta, Georgia. It further asserted that LG America primarily sells and distributes petrochemical materials and products such as ABS resin and engineered plastic. LG America stated that it does not have any manufacturing plants and it focuses exclusively on sales and distribution.

LG Chem averred in its special appearance that it is a South Korean company with its headquarters and principal place of business located in Seoul, South Korea. While LG Chem did not deny that it manufactured 18650 lithium-ion batteries, it did affirmatively state that it "does not design or manufacture 18650 lithium-ion cells for sale to individual consumers as standalone batteries." It further averred that LG Chem "does not distribute, advertise, or sell 18650 cells directly to consumers, and has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to distribute, advertise, or sell [LG Chem's] 18650 lithium-ion cells directly to consumers as standalone batteries." It also averred that it "does not design, manufacture, distribute, or sell 18650 lithium-ion cells for use by individual consumers as standalone, replaceable, rechargeable batteries in electronic cigarette or vaping devices, whether in Texas or any place else."

After LG America filed its special appearance, Zapata filed his First

Amended Petition. Zapata's jurisdictional allegations in this petition consisted of the following:

> 3.2    Defendant LG Chem America, Inc. is a foreign for-profit corporation organized under the laws of the state of New Jersey. . . .
>
> 3.3    Defendant LG Chem, Ltd. is a foreign corporation organized under the laws of South Korea doing a substantial amount of business in Texas. . . .
>
> 5.2    Defendants LG Chem America Inc. and LG Chem, Ltd. . . . designed, marketed, and/or manufactured the subject battery. . . .
>
> 6.1    The subject LG 18650 battery . . . was designed, manufactured, marketed and constructed by LG Chem America, Inc. and LG Chem. Ltd. (the 'LG Defendants'). At the time the battery was designed, manufactured, marketed and constructed by the LG Defendants, the LG Defendants were in the business of designing, manufacturing, marketing, constructing, and/or otherwise placing batteries, such as the one in question, into the stream of commerce.

Finally, Zapata alleged that he purchased the battery that exploded from a retailer, Max and Zach's Vapor Shop, located in Highlands, Texas. Zapata's first amended petition was his live pleading at the time the trial court denied appellants' special appearances.

Zapata attached exhibits to his initial special appearance responses. Appellants objected to some, but not all, of Zapata's initial exhibits arguing they should be excluded because they had not been properly authenticated and were hearsay. The exhibits appellants objected to were: (1) Exhibit C, a map printout showing the alleged location of Stanley Black & Decker manufacturing sites; (2) Exhibit D, an alleged printout from Stanley Black & Decker's website; (3) Exhibit E, an alleged Inventus Power white paper on lithium-ion battery technology; and (4) Exhibit H, an alleged Google Maps printout showing an LG Electronics location.

3

Zapata later filed supplemental responses to appellants' special appearances. Zapata again attached exhibits to these responses. Appellants objected to the trial court considering these supplemental exhibits because they had not been properly authenticated and because they were hearsay. The challenged exhibits were Exhibit A-2(iii), an affidavit prepared by Angela Nehmens, one of the plaintiff's attorneys in a different case against appellants, and Exhibits B, C, D, and E attached to Nehmens' affidavit, which were purported to be approximately 2,200 pages of U.S. Customs Service spreadsheets that Zapata alleged showed shipments of LG Chem products throughout Texas that Zapata alleges were consigned to LG America. These exhibits had been filed in another case against appellants that was ultimately appealed to the First Court of Appeals. *See LG Chem America, Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483, at *2 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, pet. filed).[1]

The special appearances were set for an oral hearing. At the oral hearing, appellants renewed their previous objections to Zapata's exhibits. Zapata responded that the trial court could take judicial notice of the documents. The trial court announced that it was denying appellants' special appearances and was overruling their objections to Zapata's exhibits. The trial court subsequently signed an order memorializing its oral rulings. The trial court did not make findings of fact and conclusions of law. This interlocutory appeal followed.

## ANALYSIS

In this interlocutory appeal, LG America and LG Chem filed separate briefs. Despite filing separate briefs, each appellant raises similar issues challenging the

---

[1] In *Morgan*, in addition to the approximately 2,200 pages of spreadsheets, Morgan's trial counsel also "filed a sworn declaration stating that each exhibit was a true and correct copy, and [LG Chem] did not object to Morgan's evidence." *LG Chem America, Inc.*, 2020 WL 7349483, at *2.

4

trial court's overruling of their objections to Zapata's special appearance evidence and the trial court's denial of their special appearances. We therefore address appellants' issues together.

## I. Standard of Review and Law Applicable to Special Appearances

We review de novo a trial court's denial of a special appearance. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Parties may challenge the legal and factual sufficiency of these implied factual findings. *Id*.

In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *Dodd v. Savino*, 426 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet. (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will set aside a finding on legal sufficiency grounds only if (a) there is a complete absence of a vital fact, (b) we are barred by legal or evidentiary rules from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id*. In reviewing for factual sufficiency, we consider all the evidence; we will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id*. Finally, we review the trial court's legal conclusions de novo. *Id*.

The Texas long-arm statute broadly authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state if the nonresident commits a tort in whole or in part in Texas. Tex. Civ. Prac. & Rem. Code § 17.042(2); *Luciano v. SprayFoamPolymrs.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). The Supreme Court of Texas has interpreted the broad language of the Texas long-arm statute to extend Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *M & F Worldwide*, 512 S.W.3d at 885. A plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the scope of the long-arm statute. *BMC Software*, 83 S.W.3d at 793. A defendant challenging a Texas court's personal jurisdiction must negate all jurisdictional bases alleged. *Id.*

A trial court may constitutionally exercise personal jurisdiction over a party when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *M & F Worldwide*, 512 S.W.3d at 886. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts with a forum state can give rise to either

6

general or specific jurisdiction. *Id.* Only specific jurisdiction is at issue here. In analyzing specific jurisdiction, we focus on the relationship among the defendant, the forum, and the particular litigation at hand. *See M & F Worldwide*, 512 S.W.3d at 886 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) and *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–76 (Tex. 2007)). Specific jurisdiction is established when the plaintiff's cause of action arises from or relates to the defendant's alleged minimum contacts within the forum. *Id.* For specific jurisdiction purposes, a defendant's minimum contacts with a forum are established when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Three principles govern the purposeful-availment analysis: (1) "only the defendant's contacts with the forum" are relevant, not the unilateral activity of another party; (2) the defendant's acts must be "purposeful" and not "random, isolated, or fortuitous"; and (3) the defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" such that it impliedly consents to suit there. *Id.* "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.*

Specific jurisdiction covers defendants less intimately connected with a state, but only as to a narrower class of claims. *Ford Motor Co. v. Montana Eighth Judicial Court*, 141 S.Ct. 1017, 1024 (2021). Thus, specific jurisdiction is transaction focused. *Calyx Energy III, LLC v. Enerfin Resources I Ltd. P'ship*, No. 14-19-00790-CV, 2021 WL 330195, at *5 (Tex. App.—Houston [14th Dist.] Feb. 2, 2021, no pet.) (mem. op.). A trial court has specific jurisdiction over a

7

nonresident defendant when (1) the defendant's contacts with the forum state are purposeful, and (2) the plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 141 S.Ct. at 1024–25 (internal quotation marks omitted). This rule narrows the types of claims over which a state court may exercise specific jurisdiction over a defendant. *Id.* at 1026. As the United States Supreme Court recently explained,

> The first half of the standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum.

*Id.* While not requiring direct causation, specific jurisdiction does require that the plaintiff's claim arise from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in the forum. *Id.* at 1027. In other words, there must be a substantial connection between the operative facts of the plaintiff's claim and the defendant's contacts with the forum. *LG Chem, Ltd. v. Turner*, No. 14-19-00326-CV, 2021 WL 2154075, at *3 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.). The operative facts are those facts that would be the focus of a trial on the merits. *Chevron Thailand Expl. & Prod., Ltd., v. Taylor*, No. 14-18-00540-CV, 2019 WL 6483116, at *4 (Tex. App.—Houston [14th Dist.] Dec. 3, 2019, no pet.) (mem. op.).

## II. The trial court abused its discretion when it overruled appellants' objections to most of Zapata's special appearance evidence.

Both appellants argue on appeal that the trial court abused its discretion when it overruled their objections to Zapata's special appearance evidence listed above.[2] As mentioned above, both appellants objected to the challenged exhibits

---

[2] LG America made this argument in its second issue while LG Chem raised it in its third

8

asserting that they had not been properly authenticated and they were inadmissible hearsay. Both appellants make the same contentions on appeal. Zapata does not respond to appellants' evidentiary arguments on appeal. Even if we assume for purposes of this appeal that the challenged exhibits were properly authenticated pursuant to Rules 901 and 902 of the Texas Rules of Evidence, we still conclude that the trial court abused its discretion when it admitted and considered all of the challenged exhibits except the Nehmens affidavit, because they were inadmissible hearsay.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. Tex. R. Evid. 801(d), 802. The proponent of hearsay has the burden to show that the testimony fits within an exception to the general rule. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

With respect to the challenged exhibits that were attached to Zapata's initial special appearance responses[3] and the exhibits attached to the Nehmens affidavit filed with his supplemental special appearance responses,[4] we agree with appellants that all fall within the hearsay rule because each is an out-of-court statement by a third party offered into evidence to prove the truth of what was asserted in the document. *See* Tex. R. Evid. 801(d), 802 (defining hearsay and stating that it is generally inadmissible). Because Zapata has not demonstrated that the challenged exhibits fit within an exception to the general rule, we hold that the

issue.

[3] These were Exhibit C, a map printout showing the location of Stanley Black & Decker manufacturing sites, Exhibit D, an alleged printout from Stanley Black & Decker's website, Exhibit E, an alleged Inventus Power white paper on lithium-ion battery technology and Exhibit H, an alleged Google Maps printout showing an alleged LG Electronics location.

[4] These were Exhibits B, C, D, and E, each purported to be U.S. Customs Service spreadsheets.

trial court abused its discretion when it overruled appellants' hearsay objections and admitted the exhibits.

Turning to the Nehmens affidavit itself, we conclude that the trial court did not abuse its discretion when it overruled appellants' hearsay objection because, while an affidavit would ordinarily be considered hearsay, Rule 120a of the Texas Rules of Civil Procedure authorizes a trial court to consider affidavits filed by the parties when it rules on a party's special appearance.[5]  Tex. R. Civ. P. 120a; *see* Tex. R. Evid. 802 (stating that hearsay is not admissible unless a statute or rules prescribed under statutory authority provide otherwise).  The Nehmens affidavit, however, attempts only to authenticate the attached documents, Nehmens did not offer any evidence on appellants' contacts with Texas or on whether Zapata's claims are substantially connected with those contacts.

With the exception of the Nehmens affidavit, we sustain LG America's second issue on appeal and LG Chem's third issue on appeal.

## II.   The trial court erred when it denied appellants' special appearances because there is not a substantial connection between appellants' purposeful contacts with Texas and the operative facts of Zapata's claims.

Both appellants argue that the trial court erred when it denied their special appearances because there is not a substantial connection between Zapata's claims and appellants' contacts with Texas.  This is not the first time this court has addressed a special appearance involving LG 18650 lithium-ion batteries.  In two opinions this court held that the trial courts in those cases erred when they denied LG Chem's special appearances.  *See LG Chem, Ltd. v. Granger*, No. 14-19-

---

[5] Appellants did object in the trial court that the Nehmens affidavit should be excluded because it was conclusory.  Appellants have not renewed their conclusory objection on appeal, we therefore need not address it.

00814-CV, 2021 WL 2153761, at *7 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.); *Turner*, 2021 WL 2154075, at *6.

In both *Granger* and *Turner*, it was undisputed that LG Chem "directs some amount and some types of lithium-ion batteries to Stanley Black and Decker and signed a 'long-term' contract with Hewlett Packard in 2005." *Granger*, 2021 WL 2153761, at *5; *see Turner*, 2021 WL 2154075, at *5. But, this court pointed out that there was "no evidence or unnegated allegations that appellees' claims arose [from] appellant's Texas contacts—the sale of its batteries to Stanley Black and Decker or Hewlett Packard." *Granger*, 2021 WL 2153761, at *5; *see Turner*, 2021 WL 2154075, at *5 ("Here, while it is undisputed that appellant sells some amount and types of lithium-ion batteries into Texas and has a relationship with Stanley Black and Decker, there is no evidence, nor even an allegation that these connections with Texas are in any way connected to appellee's claims."). Because there was not a substantial connection between LG Chem's purposeful contacts with Texas and the operative facts of the plaintiffs claims in each case, this court reversed the trial court's denial of LG Chem's special appearances. *Granger*, 2021 WL 2153761, at *7; *see Turner*, 2021 WL 2154075, at *6.

Zapata attempts to distinguish both *Granger* and *Turner* by asserting that he presented additional evidence, primarily the alleged U.S. Customs spreadsheets that were originally filed in the trial court in the *Morgan* case. 2020 WL 7349483, at *2. We have determined that this evidence was inadmissible hearsay and the remaining evidence in our record in this appeal fails to demonstrate a substantial connection between appellants' purposeful contacts with Texas and the operative facts of Zapata's claims. *Ford Motor Co.*, 141 S.Ct. at 1024; *Turner*, 2021 WL 2154075, at *3; *see Ethridge v. Samsung SDI Co., Ltd.*, No. 3:21-cv-306, 2022 WL 2920429, at *10 (S. D. Tex., July 26, 2022) ("Ethridge has failed to show his

11

claims arise from or relate to Samsung's purposefully limited economic activity in Texas. Like *Richter*, there is evidence that Samsung shipped batteries to companies in Texas engaged in the manufacturing or repair of other products, but no evidence that the presence of the offending battery in Texas was the result of purposeful availment by Samsung as opposed to an unauthorized act by third parties. Without more, there is no substantial connection . . . between the nonresident defendant's contacts and the operative facts of the litigation.") (internal quotations and citations omitted). Because there is no legally significant difference between the facts of the present case and the facts at issue in *Granger* and *Turner*, we follow our binding precedent and hold that the trial court erred when it denied appellants' special appearances. To hold otherwise would subject appellants to personal jurisdiction in Texas based on the unilateral acts of third parties. *See Ethridge*, 2022 WL 2920429, at \*10. We sustain LG Chem's first issue on appeal and LG America's issues 1B, 1C, and 1D.

## CONCLUSION

Because we conclude that Zapata has not shown that specific jurisdiction exists in Texas over appellants, we reverse the trial court's order denying appellants' special appearances and render judgment dismissing Zapata's claims against both appellants for lack of personal jurisdiction.


/s/     Jerry Zimmerer
        Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

12